IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL NO. 5:15CV46-FDW-DSC

| | |
|---|---|
| BEATRICE LEMONS, )<br>        Plaintiff, )<br>                      )<br>    vs.                )<br>                      )<br>CAROLYN W. COLVIN, )<br>**Commissioner of Social** )<br>**Security Administration,** )<br>        Defendant. )<br>_____) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #9) and Defendant's "Motion for Summary Judgment" (document #11), as well as the parties' briefs and submissions.

This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

On July 2, 2012, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and

---

[1] Pursuant to the Text-Only Social Security Scheduling Order entered on June 12, 2015, Plaintiff was entitled to file a response brief on or before November 30, 2015. Plaintiff did not file a response.

1

Supplemental Security Income Benefits ("SSI") alleging that she became disabled on July 1, 2011 due to Crohn's disease, colitis, and "psc [sic]" (Tr. 94, 106, 121). The applications were denied initially and upon reconsideration. (Tr. 71, 87). Plaintiff requested a hearing which was held on April 24, 2014. (Tr. 372-402).

On August 24, 2014, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. (Tr. 13-21). At step one, the ALJ determined that Plaintiff had earned income from work that did not rise to the level of substantial gainful activity. The ALJ found that this constituted "consistent activity," which suggested that Plaintiff was more capable than she alleged at her hearing (Tr. 15). The ALJ also found that Plaintiff suffered from Crohn's disease and chronic fatigue, which were severe impairments within the meaning of the regulations Id., but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 16). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform light work,[3] allowing for ready access to a restroom (Tr. 16). The ALJ also found that Plaintiff was limited to simple, routine, repetitive tasks with a sit or stand option allowing her to change positions every hour. (Tr. 16).

The ALJ failed to make a finding as to Plaintiff's ability to perform her past relevant work. He resolved this issue in her favor, however, when he shifted the burden to the Secretary to show the existence of other jobs in the national economy that she could perform. In response to a

---

[2]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

hypothetical that factored in the above limitations, a Vocational Expert ("V.E.") identified jobs as office helper, laundry folder, and furniture rental consultant that Plaintiff could perform. (Tr. 20). The ALJ clarified for the V.E. that "ready access to the bathroom" meant a toilet had to be available inside the building and within a reasonable distance such as fifty to one hundred feet (Tr. 393). The V.E. responded that his testimony was consistent with those limitations (Tr. 394-95).

The V.E. testified that an employee would normally get a break every two hours for ten to fifteen minutes in the morning and afternoon, as well as thirty minutes to an hour for lunch (Tr. 396). A typical employer would also allow up to two additional unscheduled breaks of five minutes each (Tr. 396). The V.E. testified that the jobs he identified were not at a production pace where the worker would have to be present at all times. (Tr. 395).

Based upon this testimony, the ALJ found that there were a significant number of jobs in the regional and national economy that Plaintiff could perform. (Tr. 20-21) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Id.

On February 20, 2015, the Appeals Council denied Plaintiff's Request for Review. (Tr. 5-8).

Plaintiff filed the present action on April 13, 2015. She assigns error to the ALJ's evaluations of the opinion of Dr. Kim Isaacs, her treating gastroenterologist, and her RFC. "Memorandum in Support … " at 1 (document #10). Plaintiff also contends that the ALJ failed to consider Listing 5.06(b)(4), which includes irritable bowel disease (IBS). Id.

The parties' Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review

of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v.

4

Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became disabled[4] as that term of art is defined for Social Security purposes. The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p at *2. However, it is the claimant's burden to establish her RFC by demonstrating how those impairments impact her functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012).

The Fourth Circuit recently held that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v.

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

5

Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). This explicit function-by-function analysis is not necessary when functions are irrelevant or uncontested. It is only after that function-by-function analysis has been completed that Residual Functional Capacity (RFC) may "be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id. The ALJ's RFC determination here is supported by substantial evidence including Plaintiff's testimony, medical records and treatment history.

Plaintiff testified that on a good day she experiences six, and on a bad day ten to twelve unpredictable bouts of diarrhea. However, when Plaintiff's condition was at its worst in December 2005 and she was still working, she reported having uncontrolled liquid bowel movements four to five times a day, including once at night (Tr. 291, 293). Plaintiff never told her doctors that she experienced six to twelve bouts of diarrhea per day. 20 C.F.R. §§ 404.1529(a) and 416.929(a) (statements about your pain or other symptoms will not alone establish that you are disabled). See also Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996) (claimant's subjective allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence").

In contrast to her subjective reports, the record prior to the period at issue shows that Plaintiff's condition was improving. With the help of medication by March 2006, Plaintiff reported that she was having five non-watery bowel movements that were "controllable" (Tr. 289). By August 2006, she reported approximately three to five stools per day, which she described as her baseline (Tr. 287). In November 2007, she was still having five stools per day (Tr. 278). By February 2008, she was still having five stools per day with no urgency (Tr. 276). In August 2008, Plaintiff told her doctor that she experienced one or two non-consecutive bad days per week where she would have bad diarrhea (Tr. 274). In August 2009, she reported one loose stool and multiple

others per day (Tr. 270). By January 2010, she reported only "occasional" episodes of diarrhea (Tr. 268). In August 2010, Plaintiff was having five bowel movements per day including two at night, "somewhat looser than usual," which she attributed to eating more fruits and vegetables—not to her impairments (Tr. 266). In the last entry before her alleged onset date, Plaintiff stated that she was having six bowel movements per day with no mention of diarrhea or urgency. (Tr. 264). Even when Plaintiff's condition was at its worst and she was still employed she never reported symptoms as severe as those she described at the hearing. (Tr. 382).

From Plaintiff's alleged onset date of July 1, 2011 through the date of the ALJ's decision on August 28, 2014, her medical records do not contain any complaints of diarrhea. On September 12, 2011, Dr. Isaacs noted that Plaintiff was "doing well in terms of her bowel issues on the Humira" (Tr. 263). Plaintiff told Dr. Koruda that she had between four and five bowel movements per day, with one occurring in the middle of the night (Tr. 203). A September 2013 progress note from Dr. Isaacs indicated that Plaintiff reported six bowel movements per day (Tr. 255). Plaintiff was not taking Immodium regularly despite her complaints of diarrhea (Tr. 255). Similarly, Dr. Lee's office notes on August 22, 2011, September 26, 2011, February 27, 2012, and June 8, 2012 do not document any complaints of diarrhea. During the period at issue, Plaintiff saw Dr. Lee related to Vitamin D deficiency and a flu shot (Tr. 236, 238, 239, 241).

The ALJ included in the RFC that Plaintiff would need ready access to a restroom (Tr. 16) inside the building and within a reasonable distance of fifty to one hundred feet (Tr. 393). The V.E. testified that such limitation was consistent with his testimony and that Plaintiff would be able to take three scheduled and two nonscheduled breaks per day. (Tr. 394-95). The ALJ fully accommodated Plaintiff's restroom needs in the RFC. (Tr. 203, 255).

Plaintiff also asserts that the ALJ failed to give proper weight to Dr. Isaacs' opinion. The Fourth

7

Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of an alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

The ALJ acknowledged Dr. Isaac's July 2012 opinion that "over the past year" Plaintiff had "significant problems with weight loss and general ill health," fatigue, and diarrhea (Tr. 165-66). The ALJ properly concluded that Dr. Isaacs' opinion was entitled to less weight because it was inconsistent with her own treatment notes and those of Dr. Lee (Tr. 19). In contrast to her July 2012 opinion, Dr. Isaacs's progress note from September 2011 describes Plaintiff's weight as stable (Tr. 262). In February 2012, Dr. Isaacs noted that Plaintiff had significant weight loss in 2008, but showed marked improvement after starting Humira, and was now "really at her baseline at about 55.2 kg." (Tr. 259). Plaintiff had already regained her weight prior to the period at issue and was able to maintain it (Tr. 256, 257, 260, 262, 265, 266).

Rather than documenting "general ill health," Dr. Isaacs' progress notes state that Plaintiff has "really done quite well on the Humira" (Tr. 262). Similarly, on November 15, 2011, Dr. Koruda found that Plaintiff had "actually been doing very well" and "really had no complaints." (Tr. 207). On December 13, 2011, Dr. Koruda again noted that Plaintiff had "done very well," healed nicely from an abcess drainage, and was "quite comfortable" (Tr. 209). Plaintiff had no

8

drainage or rectal pain (Tr. 209). Moreover, during the period at issue Plaintiff continued to work twelve hours a week caring for an elderly woman with dementia. She stopped work in August 2013 because the home health care company went out of business (Tr. 186, 390). This record contradicts Dr. Isaacs' characterization of "general ill health" during the period at issue.

The record does not support Dr. Isaacs' statements about fatigue and low energy. These conditions are absent from Dr. Isaacs' progress notes during the period at issue (Tr. 255-63). Similarly, Dr. Lee's progress notes document Plaintiff's denials of fatigue (Tr. 236, 241). Dr. Koruda noted that Plaintiff had "normal energy" (Tr. 203).

Plaintiff points to Dr. Isaacs' comments in April 2014 that "current symptoms are diarrhea, bathroom urgency, fatigue, weight loss and abdominal pain, which are unpredictable and limit Plaintiff's ability to dependably work a full 8 hours a day." (Tr. 365). Again, Dr. Isaacs' opinion is completely at odds with her records. On March 4, 2014, Dr. Isaacs noted Plaintiff's report that her bowel movements have been "very stable" (Tr. 355). Plaintiff reported four to six bowel movements per day, with no mention of diarrhea (Tr. 355). Plaintiff's weight was 55.1 kg—virtually identical to the 55.2 kg that Dr. Isaacs had previously deemed her "baseline" (Tr. 259, 355). Dr. Isaacs' March 2014 progress note does not mention any complaints of fatigue or abdominal pain. Dr. Isaacs reported that Plaintiff presented that day "actually feeling quite well" (Tr. 355). The ALJ gave proper reasons supported by substantial evidence for not accepting Dr. Isaacs' opinions (Tr. 19).

The ALJ properly found that Plaintiff's Crohn's disease and related symptoms did not meet or equal the requirements of Listing 5.06 (Tr. 16). Plaintiff alleges that she has established a prima facie case that her condition meets Listing 5.06(B)(4). Document #10 at 10 - 11. Plaintiff alleges that she has IBS with a draining abscess or fistula accompanied by pain that is not completely

9

controlled by prescribed narcotic medication, present on at least two evaluations at least sixty days apart, despite treatment in the same six month period. She argues that this condition meets the requirements of the Listing. 20 C.F.R. Pt. 404, Subpt. P, App'x I § 5.06(B)(4).

Plaintiff fails to acknowledge that Listing 5.06(B) requires a claimant to satisfy *two* of the following series of elements—not just the one series (perineal disease with draining abscess or fistula) that Plaintiff cites. The other series of elements includes anemia, low serum albumin, an abdominal mass, and involuntary weight loss of at least ten percent from baseline. Id. Plaintiff points to nothing in the record to show that she satisfied any other series of elements in Listing 5.06(B)(4) during the period at issue.

Although the medical records establish that Plaintiff experienced symptoms to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994) (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #9) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #11) be **GRANTED**; and that the Commissioner's

determination be **AFFIRMED.**

## V. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Diamond</u>, 416 F.3d at 316; <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Wells</u>, 109 F.3d at 201; <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; <u>and to the Honorable Frank D. Whitney.</u>

**SO RECOMMENDED AND ORDERED**.

Signed: December 3, 2015

_____
David S. Cayer
United States Magistrate Judge